```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                    :
BRIAN KEEBLER,                      :
                                    :
             Plaintiff,             :
                                    :
    -against-                       :    REPORT AND RECOMMENDATION
                                    :    05 Civ. 1360 (SCR)(MDF)
MONTICELLO VILLAGE POLICE           :
OFFICER EDWARDS – BADGE NUMBER      :
604, MELISSA R. RUDICK,             :
VILLAGE OF MONTICELLO – MUNICIPAL   :
ENTITY, MARK MEDDAUGH – NEW YORK    :
STATE FAMILY COURT JUSTICE, BURTON  :
LEDINA – ACTING NEW YORK STATE      :
FAMILY COURT JUSTICE, and           :
MONTICELLO VILLAGE JUSTICE (JOHN    :
OR JANE DOE), individually and in   :
their official capacities,          :
                                    :
             Defendants.            :
                                    :
-----------------------------------X
```

**TO: THE HONORABLE STEPHEN C. ROBINSON, U.S.D.J.**

Plaintiff, Brian Keebler, *pro se* and incarcerated, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the First, Fourth, and Fourteenth Amendments in connection with the issuance of a warrant for his arrest for aggravated harassment under § 240.30(1) of the New York Penal Law.  The remaining defendants,[1] the Village of Monticello (the

---

[1] By order dated February 2, 2005, Keebler's complaint was dismissed as against defendants Rudick, Meddaugh, Ledina, and the Monticello Village Justice.  *See* February 2, 2005 Order.

1

"Village") and Officer Edwards now move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, asserting that Edwards is entitled to qualified immunity and that Keebler has failed to state a claim against the Village under *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978). For the following reasons, I respectfully recommend that the Defendants' motion be GRANTED.

## BACKGROUND

On February 4, 2004, Melissa R. Rudick, the estranged wife of Keebler, went to the Village Police Department complaining about a letter she had received from Keebler. *See* Defendants' Rule 56.1 Statement of Facts ("Rule 56.1 Statement") at ¶ 1. After interviewing Rudick, defendant Edwards prepared a misdemeanor complaint, which Rudick signed, and attached a copy of Keebler's letter. *See id*. at ¶ 2-3; Notice of Motion at Ex. D (misdemeanor complaint). The complaint alleged that Keebler violated section 240.30(1) of the N.Y. Penal Law[2] and stated:

    THE SAID DEFENDANT DID ON THE ABOVE DATE, PLACE AND

---

[2] Section 240.30(1) provides, in relevant part:

  A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she: (1) . . . (a) communicates with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm.

N.Y. Penal Law § 240.30(1).

>    TIME SEND A LETTER BY MAIL FROM THE FRANKLIN
>    CORRECTIONAL FACILITY TO THE COMPLAINANT IN A WRITTEN
>    MANNER THAT IS ALARMING, HARASSING AND ANNOYING TO THE
>    COMPLAINANT REGARDING THEIR CHILDREN AND FAMILY COURT
>    CASE BY STATING THAT HE WOULD PURSUE ANY (UNDERLINED
>    IN BOLD) REMEDY THAT WOULD FACILITATE VISITATION TO
>    HIS CHILDREN AND THAT HIS REMEDIES ARE NOT ENTIRELY
>    LIMITED TO FAMILY COURT PROCEEDINGS.

Notice of Motion at Ex. D. Subsequently, the complaint and a proposed arrest warrant were presented to the Monticello Village Justice for review. *See* Rule 56.1 Statement at ¶ 4. On February 6, 2004, the Village Police Department received notice that the Village Justice had issued an arrest warrant and logged the warrant on its warrant file. *See id*. at ¶¶ 5-6; Notice of Motion at Ex. E (arrest warrant). Because Keebler was incarcerated, on February 27, 2004, the Police Department sent the warrant to the New York State Department of Corrections ("DOCS"). *See* Rule 56.1 Statement at ¶ 7.

In April 2004, Dispatcher Patricia Diuguid of the Village Police Department received notice from the District Attorney that the warrant had been withdrawn. *See id*. at ¶ 9. The Police Department subsequently notified DOCS. *See id*. at ¶ 10; Notice of Motion at Ex. L (letter to DOCS). By letter dated April 5, 2004, DOCS confirmed that it had received the notice and returned the arrest warrant. *See* Notice of Motion at Ex. M.

In February 2005, Keebler filed the instant complaint. He alleges that, at the time the misdemeanor complaint was filed, the application of § 240.30(1) to harassing, annoying, or

alarming conduct had been declared unconstitutional and, thus, the filing of the misdemeanor complaint, which only alleged harassing, annoying, and alarming conduct and not threatening conduct, and his eventual "arrest" were in violation of his constitutional rights.  *See* Compl. at ¶¶ 14-20.  He further alleges that the contents of the letter he sent to Rudick constituted protected speech within the meaning of the First Amendment and was not unlawful under § 240.30(1).  *See id*. at ¶ 37.  With respect to the Village, Keebler alleges that it has a policy of "failing to train its police officer as to the constitutionality of statues," "failing to train [its] police officers to adequately distinguish between protected speech and speech which may be constitutional[l]y proscribed," and "continuing to enforce statutes that have previously been found unconstitutional."  Compl. at ¶ 21.  With respect to defendant Edwards, Keebler asserts that Edwards conspired with Rudick "to penalize Plaintiff for exercising his right to Free Speech by drafting affirmations and/or affidavits purporting to support a criminal charge against Plaintiff under New York Penal Law § 240.30(1) based upon the letter."  *Id*. at ¶ 30. Keebler seeks monetary damages and declaratory and injunctive relief.

In July 2006, the Defendants filed this motion for summary judgment.  In support of his claim of qualified immunity, defendant Edwards asserts that, at the time he prepared the

misdemeanor complaint, it was not clearly established that N.Y. Penal Law § 240.30(1) was unconstitutional, either on its face or as applied to the facts of this case.  *See* Defendants' Memo. of Law at 5-8.  He argues that, before February 2004, there were no cases decided which could be said to have put him on notice that § 240.30(1) was unconstitutional on its face, or as applied to the facts of this case.  *See id*. at 7.  According to Edwards, he did not receive notice of the constitutional issues surrounding the statute until June 23, 2004 when a legal bulletin service notification from the New York State Police was posted in the Police Department.  *See id*. at 7; Notice of Motion at Ex. C, ¶ 23 (Response to Plaintiff's Written Questions for Monticello Village Police Officer Edwards).  Edwards further notes that he did not arrest Keebler, nor did he make the decision to issue a warrant for his arrest.  *See id*. at 8.

    The Village argues that there is nothing in the record to support Keebler's claim that the Village maintained a policy of failing to train its police officers regarding the constitutionality of criminal statues.  *See id*. at 8-10.  It asserts that, as part of the training and education of its police force, it provided its police officers with on-the-job training and posted legal bulletin service notifications received from the New York State Police.  *See id*. at 9-10.

5

In response to the summary judgment motion,[3] Keebler argues that the November 24, 2003 decision of Judge Scheindlin of this Court in *Vives v. City of New York*, 305 F.Supp.2d 289 (S.D.N.Y. 2003), put police officers on notice that § 240.30(1) had been declared unconstitutional as applied to harassing, annoying, or alarming conduct. *See* Keebler's Memo. of Law at 5-6. Keebler asserts that his letter to Rudick did not contain any threats and, thus, Edwards acted improperly in preparing the misdemeanor complaint. *See id.* at 6. With respect to the Village, Keebler argues that the Village has created a policy of enforcing statutes previously declared unconstitutional and applying statutes in an unconstitutional manner and has failed to properly train its police officers. *See id.* at 7.

---

[3] The Defendants failed to serve Keebler with a notice advising him of how to respond to a motion for summary judgment and the consequences of failing to properly respond, as required by Local Rule 56.2. Failure to afford such notice to a *pro se* litigant is a basis for denial of the motion. *See Vital v. Interfaith Medical Ctr.*, 168 F.3d 615, 620 (2d Cir. 1999). However, denial of the motion is not required where the circumstances of the case indicate that the *pro se* litigant understood the nature and consequences of the summary judgment process. *See Forsyth v. Federation Employment and Guidance Svc.*, 409 F.3d 565, 570-72 (2d Cir. 2005). Here, the circumstances show that Keebler understands the summary judgment process. He has submitted an opposition to the Defendants' Rule 56.1 Statement of Facts, in which he recited his version of the facts and referred to parts of the record to support those facts. Additionally, in his memorandum of law, he sets forth what he believes are the disputed issues of material fact. Keebler has also submitted numerous exhibits along with his opposition papers. Under these circumstances, denial of the Defendants' motion for failure to comply with Local Rule 56.2 is not necessary.

## ANALYSIS

**I.     Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. In order for there to be a genuine issue for trial, there must be sufficient evidence in the record to support a jury verdict in the non-moving party's favor. *See id.* at 249. When making a summary judgment determination, "the court must view the evidence in the record in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

7

In opposing a motion for summary judgment, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Mere conclusory allegations and denials are insufficient to create a genuine issue of fact; rather, the opposing party must set forth "concrete particulars" showing that a trial is necessary.  *BellSouth Telecommunications, Inc. v. W.R. Grace & Company-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996)(internal quotations omitted).

**II.      Qualified Immunity**

The doctrine of qualified immunity is designed to shield state officials from liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  It protects individual defendants sued in their individual capacity, not governmental entities, and can only serve to bar claims for monetary damages, not claims for equitable relief.  *See Ford v. Reynolds*, 316 F.3d 351, 356 (2d Cir. 2003).

In determining whether a defendant is entitled to qualified immunity, a court must first assess whether the facts alleged show that the officer's conduct violated a constitutional right.

*See Saucier v. Katz*, 533 U.S. 194, 200 (2001).  If the answer to that question is yes, the court must then go on to assess whether the right was clearly established.  *See Pena v. DePrisco*, 432 F.3d 98, 107 (2d Cir. 2005).  While courts have often ruled on qualified immunity without considering whether a constitutional violation has been demonstrated, in *Saucier*, the Supreme Court held that this sequential two-step analysis of qualified immunity claims is mandatory.  *See Saucier*, 533 U.S. at 201 (holding that "the first inquiry *must* be whether a constitutional right would have been violated on the facts alleged" (emphasis added)); *Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 56-57 (2d Cir. 2003)("In *Saucier*, the Supreme Court made plain that a sequential two-step analysis of qualified immunity claims is not simply recommended but required.").

Since *Saucier*, the Second Circuit has found that there are limited "situations in which one can conclude that the Supreme Court did not intend to make the *Saucier* sequence mandatory," including where the constitutional issue could be resolved in a related criminal proceeding and where determination of the constitutional issue depends on the resolution of uncertain state law.  *Ehrlich*, 348 F.3d at 57-58.  In *African Trade & Info. Ctr., Inc. v. Abromaitis*, the Second Circuit, in ruling on the issue of qualified immunity, declined to first determine whether the plaintiff's constitutional rights had been violated.  *See* 294

F.3d 355, 359-60 (2d Cir. 2002). The Court reasoned that such an approach was appropriate because the case squarely raised a constitutional issue that had been expressly reserved by the Supreme Court, the merits of the issue were not adequately briefed by the parties, and the issue was not likely to evade judicial review. *See id*. Similarly, in its decision on the appeal from Judge Scheindlin's decision in *Vives*, the Second Circuit declined to first consider the constitutionality of § 240.30(1), noting that it was reluctant to pass on the issue in *dicta* and that the parties did not genuinely dispute the constitutionality of the statue in the district court or on appeal. *See Vives v. City of New York*, 405 F.3d 115, 118-19, n.7 (2d Cir. 2005). Here, because the issue of § 240.30(1)'s constitutionality is presented in the same manner as it was presented to the Court in *Vives*, this Court may decline to rule on the issue and proceed directly to the second prong of the qualified immunity analysis.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. In making this determination, a court should consider "(1) whether the right in question was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and the applicable circuit

court supported the existence of the right in question; and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." *Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 793 (2d Cir. 2002).

The Second Circuit's decision in *Vives* governs the question of whether the constitutionality of the statute was clearly established at the time of the misdemeanor complaint. In *Vives*, the Plaintiff brought First and Fourth Amendment claims under § 1983 after his arrest for aggravated harassment under § 240.30(1). *See* 405 F.3d at 115. Judge Scheindlin rejected the defendants' assertion of qualified immunity, finding that the defendants could be said to have had fair notice of the unconstitutionality of § 240.30(1) prior to arresting *Vives*. *See id.* at 116. She concluded that § 240.30(1) was unconstitutional to the extent that it prohibited communication made with the intent to annoy or alarm. *Vives*, 305 F.Supp.2d at 301-02. The circuit court reversed Judge Scheindlin's decision and held that the four cases on which Judge Scheindlin relied, which are the same four cases cited by Keebler in his complaint and opposition papers, did not give the defendants fair notice of § 240.30(1)'s "purported unconstitutionality." *Id.* at 118. As previously noted, the Court did not reach the issue of whether § 240.30(1) survives constitutional scrutiny.

Edwards argues that, as of the date of Judge Scheindlin's

decision in *Vives*, November 23, 2003, defendant Edwards should have known that § 240.30(1) was unconstitutional. This decision, however, did not clearly establish that § 240.30(1) was unconstitutional. At the time Edwards prepared the misdemeanor complaints, there was no decision from the New York Court of Appeals, the Supreme Court, or the Second Circuit, declaring § 240.30(1) unconstitutional. While Judge Scheindlin had previously decided *Vives*, a district court decision does not render the law on an issue clearly established for the purposes of the qualified immunity analysis. *See Cerrone v. Brown*, 246 F.3d 194, 202 (2d Cir. 2001)("A district court opinion affirmed by an unpublished table decision does not determine whether a right was clearly established."). Moreover, as of February 2004, no notice concerning § 240.30(1) had been issued to New York law enforcement officials advising of constitutional problems with the statute. Edwards did not receive any sort of notice until June 23, 2004, over four months after preparing the misdemeanor complaint, when a legal service notification bulletin from the New York State Police was posted in the Police Department. *See* Opposition to Defendants' Motion for Summary Judgment at Ex. J (Bulletin); Notice of Motion at Ex. C, ¶ 23 (Response to Plaintiff's Written Questions for Monticello Village Police Officer Edwards). Keebler has offered no evidence to rebut this assertion. Presented with Rudick's complaint and the letter from

Keebler, Edwards's application of the statute to Keebler was objectively reasonable. While the letter may not have included express threats, Edwards reasonably believed at the time that the annoying, harassing, and/or alarming content of the letter could be deemed unlawful under § 240.30(1). Under these circumstances, it cannot be said that Edwards's decision to prepare the misdemeanor complaint was objectively unreasonable in light of clearly established law and he is, therefore, entitled to qualified immunity on Keebler's claims for money damages against him in his individual capacity.

With respect to Keebler's claims for equitable relief against Edwards, while he is not entitled to qualified immunity on these claims, summary judgment should be granted to Edwards on these claims. Keebler asks that this Court: (1) enter a judgment declaring that the defendants violated his constitutional rights; (2) "enjoin[ the defendants] for penalizing [him] for exercising his right to free expression"; (3) mandate[] that [his] arrest and prosecution date pertaining to this incident be sealed"; and (4) vacate any orders of protection arising from this incident. Compl. at ¶¶ 61-62.

To state a § 1983 claim, a plaintiff must prove four elements: (1) actions taken under color of law; (2) deprivation of constitutional or statutory right; (3) causation; and (4) damages. *See* 42 U.S.C. § 1983. Here, Keebler has failed to

establish that he suffered any constitutional injury as a result of Edwards's actions.  The only role Edwards played in this incident was to interview Rudick, draft the complaint for Rudick's signature, and "place[ the complaint] on a clip board for review by the Village Justice."  Notice of Motion at Ex. C, ¶ 12.  Edwards did not sign the complaint nor did he make the determination that the issuance of an arrest warrant was appropriate.  Furthermore, Keebler was never arrested on the § 240.30(1) charge.  In fact, the warrant was withdrawn in early April 2004 and returned to the Village Police Department by the correctional facility superintendent.  In addition to his First and Fourth Amendment claims, Keebler alleges that he was deprived of his substantive due process right to familial association by the issuance of an Order of Protection against Keebler by the Family Court on February 24, 2004.  *See* Compl. at ¶¶ 38-41.  He, however, has failed to establish how Edwards's actions were at all related to the decision of the Family Court judge to issue this order.  According to Keebler's opposing statement of facts, Rudick obtained the order of protection by submitting her misdemeanor complaint and Keebler's letter to the Family Court judge.  *See* Keebler's Statement of Facts at ¶ 16.  In the absence of any evidence to show that Edwards caused Keebler to suffer a constitutional injury, I recommend that your Honor grant summary judgment to Edwards on Keebler's claims for equitable relief.

**III.**     *<u>Monell</u>* <u>Liability</u>

In order to hold a municipality liable under § 1983 for unconstitutional acts of its employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal policy or custom.  *See Monell*, 436 U.S. at 694.  A plaintiff may satisfy the policy or custom requirement by demonstrating the existence of: (1) an official policy of the municipality; (2) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (3) "a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials"; or (4) a failure by the municipal policymakers to supervise employees to such an extent that it amounts to deliberate indifference to the rights of those who come in contact with these employees.  *McEnery v. City of New York*, No. 03 Civ. 6307, 2006 WL 2224566, at *10 (S.D.N.Y. Aug. 3, 2006).

Keebler has failed to demonstrate or set forth any evidence of a municipal practice or policy or of a failure to train, which amounts to a deliberate indifference to the rights of those who may come in contact with municipal employees.  He argues that, because the Village Police Chief indicated in his answers to Keebler's written questions during discovery that he was not

15

aware of any "directives" from the New York State Police concerning the enforcement of § 240.30(1), it was the policy and practice of the Village to enforce the statute.  From this, Keebler concludes that "the defendants have taken it upon themselves to enforce a State criminal statute that was previously declared unconstitutional."  Keeber's Memo. of Law at 7.  Keebler further argues that, the absence of any information in the Village Police Department's training manuals concerning § 240.20(1) or "free speech," demonstrates that "the Village . . . consciously chose[] not to train it[]s officer[s] with regard to the statute or free speech rights" and created a policy of failing to train it police officers.  *Id*. at 8.

   The absence of any directives from the State advising the Village on the enforcement of § 240.30(1) in no way establishes that the Village had a policy of enforcing unconstitutional statutes.  Further, Keebler has offered nothing to show that any absence of specific training on § 240.30(1) and the First Amendment amounted to a deliberate indifference to the rights of the citizens that come into contact with Village police officers.  Accordingly, I respectfully recommend that your Honor grant summary judgment to the Village on Keebler's claims.  Finally, because claims against police officers in their official capacities are essentially claims against the municipality, Keebler's claims against Edwards in his official capacity should

16

also be dismissed.  *See Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001)(when claims against municipality are dismissed, claims against police officers in their official capacities should be dismissed as well).

## **CONCLUSION**

For the foregoing reasons, I respectfully recommend that your Honor GRANT the Defendants' motion for summary judgment.

## **NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ .P., the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed. R. Civ. P., or a total of thirteen (13) working days, (*see* Rule 6(a), Fed. R. Civ. P.), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson, at the United States Courthouse, 300 Quarropas Street, Room 633, White Plains New York, 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to the Report and Recommendation will preclude later appellate review of any order to judgment that will be entered by Judge Robinson.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d

Cir.), cert. denied 113 S. Ct. 825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15,16 (2d Cir. 1989) (*per curiam*); *Wesolek v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge Robinson and should not be made to the undersigned.

Date: February 9, 2007
White Plains, New York

Respectfully submitted,

_____
MARK D. FOX
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing report and recommendation have been sent to the following:

The Honorable Stephen C. Robinson, U.S.D.J.

Brian Keebler
Mid-State Correctional Facility
P.O. Box 2500 - Route 291
Marcy, New York 13404

Paul Edward Svensson, Esq.
Boeggeman, George, Hodges & Corde, P.C.
11 Martine Avenue, Suite 920
White Plains, New York 10606